**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**ROBERT J. BARBER, JR.,**

                                        **Plaintiff,**

             **v.**                                                          **5:04-CV-82**
                                                                    **(FJS/DEP)**

**XEROX CORPORATION,**

                                        **Defendant.**
_____

**APPEARANCES**                                     **OF COUNSEL**

**LAW FIRM OF DAVIDSON & YOUNG**         **EUGENE B. YOUNG, ESQ.**
333 East Onondaga Street, Suite 4A
Syracuse, New York 13202
Attorneys for Plaintiff

**NIXON PEABODY, LLP**                          **MARGARET CLEMENS,  ESQ.**
Clinton Square, Suite 1300
P.O. Box 31051
Rochester, New York 14603
Attorneys for Defendant

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

        Plaintiff alleges that Defendant breached the collective bargaining agreement ("CBA")

that it negotiated with Plaintiff's union, Local 14-A of the Union of Needletrades, Industrial &

Textile Employees, AFL-CIO ("UNITE").

        Currently before the Court are Plaintiff's motion for summary judgment and Defendant's

cross-motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## II. BACKGROUND[1]

Plaintiff originally commenced this action in New York State Supreme Court, Cayuga County, alleging a breach-of-contract claim against Defendant.  Relying upon 28 U.S.C. § 1441(b), Defendant removed this action to federal court, asserting that the contract to which Plaintiff referred in his complaint was "either or both the collective bargaining agreement between [Defendant] and . . . [UNITE] and/or the 'Xerox Corporation-UNITE 14-A Buy-Out Program' (the "Program"), negotiated between [Defendant] and UNITE 14-A." *See* Notice of Removal at ¶ 4.  Defendant further asserted that "both the collective bargaining agreement and the Program are contracts as the term is used by the [Labor Management Relations] Act [("LMRA")], 29 U.S.C. § 185(a), and the action is therefore removable to this Court, pursuant to 28 U.S.C. § 1441(b)." *See id.* at ¶ 6 (citation omitted).

In its Memorandum-Decision and Order, dated September 21, 2004, the Court ruled on two of Plaintiff's motions.  Plaintiff moved to remand this action to state court.  In denying this motion, the Court held that the Program was a labor contract within the meaning of the LMRA, and that, therefore, the Court had subject matter jurisdiction over this claim.[2] *See* Dkt. No. 22 at

---

[1]   Plaintiff is Defendant's former union employee and was affiliated with UNITE. Therefore, the CBA between UNITE and Defendant governs the terms and conditions of Plaintiff's employment.

[2]   In his motion for summary judgment, Plaintiff states that the first issue in this case is whether the CBA gives Defendant the right to deny him the benefits of the Program by firing him for cause.  Concluding that it does not, Plaintiff asserts that "Defendant, therefore, has no defense to Plaintiff's claim for breach of the contract." *See* Plaintiff's Memorandum of Law at 4.  To clear up any ambiguity Plaintiff may have regarding the Court's previous decision, the Court

(continued...)

7.  Plaintiff also moved to amend his complaint in order to add allegations that UNITE breached its duty of fair representation and that Defendant breached the CBA.  The Court denied Plaintiff's motion to amend his complaint insofar as he sought to assert a claim against UNITE but permitted him to amend his complaint to assert a claim against Defendant for breaching the CBA.  *See id.*

Although the Court's prior Memorandum-Decision and Order outlined the background of this case, a brief summary of the facts is necessary to place the current motions in context.  In November 2002, Defendant announced a voluntary severance program, which it made available to eligible UNITE employees working at Defendant's Monroe County Operations Plant.  The official name of the program was the "XEROX CORPORATION - UNITE 14-A Buy-Out Program" (the "Program").  *See* Plaintiff's Exhibit "B" at 1.  Defendant limited Program participation to "a maximum of two hundred and fifty (250) active, guaranteed UNITE 14-A bargaining unit members . . . ."  *See id.*  Eligible UNITE employees, who wanted to participate in the Program, were required to submit a "Voluntary Buy-Out Participation Request & General

---

[2](...continued)
advises Plaintiff that his claim is cognizable under the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a); it is, therefore, a claim premised on Defendant's alleged breach of the CBA rather than a breach of a common-law contract.  As the Court noted in its previous decision, "[e]ven a cursory review of the Program demonstrates that it is a contract that was negotiated between UNITE and Defendant and, thus, is a contract within the meaning of the LMRA."  *See* Dkt. No. 22 at 7.  As this Memorandum-Decision and Order makes clear, the Court relies entirely upon federal law, specifically § 301 of the LMRA, to determine the outcome of Plaintiff's and Defendant's motions.  The Court's prior ruling, therefore, applies with even greater force now.  As a result, § 301 entirely preempts Plaintiff's claim.  *See* 29 U.S.C. § 185(a); *Cespuglio v. Ward*, No. 03 Civ. 8603, 2004 WL 1088235, *3 (S.D.N.Y. May 13, 2004) ("Section 301 preemption applies in *any* case that raises questions about the construction of, or rights and responsibilities under, a collective bargaining agreement, regardless of whether the plaintiff's claims sound in tort or contract." (footnote omitted)).

Release" form (the "Application") by December 30, 2002.[3]  *See id.*  Employees selected for participation in the Program would receive, "shortly after their departure date, a single Lump Sum payment that equals their then-present straight-time weekly pay times the number of weeks remaining between their departure date and March 13, 2005."  *See id.*

In early February 2003, Defendant's Industrial Relations Department suspected Plaintiff of theft from a plant tool crib.  Specifically, it suspected that Plaintiff had withdrawn items from the crib that he could not have used in his department.  On February 26, 2003, Defendant's Security Department personnel interviewed Plaintiff in the presence of UNITE representatives.  Plaintiff could not explain his actions and did not provide any information regarding the missing crib items.  Defendant immediately suspended Plaintiff that day, with the intention of terminating him, for violating an established Rule of Conduct.

On March 5, 2003, Plaintiff filed a grievance requesting reinstatement so that he could receive the benefits of the Program.  Plaintiff's grievance was denied through the Step 4 level, and UNITE withdrew his grievance on July 3, 2003, *see* Plaintiff's Amended Complaint at ¶ 4, opting not to proceed to arbitration.  Based upon the evidence that Defendant's Security Department gathered as part of its investigation of the incident, Defendant finalized Plaintiff's termination immediately after the union withdrew the grievance.

---

[3]  Plaintiff submitted his Application on December 23, 2002.

# III. DISCUSSION

## A.      Standard of Review

A court should grant a motion for summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The court must draw all inferences and resolve all ambiguities in the light most favorable to the nonmoving party.  *See Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996) (citation omitted).  However, where reasonable minds, viewing the record as a whole, could not find for the non-moving party, there is no genuine issue of material fact.  *See id.* (quotation omitted).

As to the initial burden, the moving party must demonstrate the absence of any genuine issues of material fact.  *See Adams v. Dep't of Juvenile Justice of City of N.Y.*, 143 F.3d 61, 65 (2d Cir. 1998) (citation omitted).  Upon satisfying this burden, the non-moving party "must come forward with 'specific facts showing that there is a *genuine issue for trial*.'"  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. Rule Civ. Proc. 56(e)) (other citation omitted).  The non-moving party may not simply rest on its pleadings, but rather it must adduce significant probative evidence which tends to support its complaint.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (citation omitted).  Finally, in deciding a summary judgment motion, courts "should not weigh evidence or assess the credibility of witnesses" because those functions are "within the sole province of the jury."  *Hayes*, 84 F.3d at 619 (citations omitted).

**B.      Defendant's Claim that Plaintiff Failed to Exhaust Administrative Remedies**

In support of its cross-motion for summary judgment, Defendant argues that, because Plaintiff's grievance never went to arbitration, the Court should dismiss Plaintiff's claim for failure to exhaust administrative remedies, a prerequisite to filing suit in federal court.  When a CBA "provides for arbitration and grievance procedures for employee grievances, the aggrieved employee must make an attempt to exhaust the procedures set forth in the governing [CBA] prior to resorting to judicial relief."  *Tand v. Solomon Schechter Day Sch. of Nassau County*, 324 F. Supp. 2d 379, 384 (E.D.N.Y. 2004) (citing *Vaca v. Sipes*, 386 U.S. 171, 184, 87 S. Ct. 903, 17 L. Ed. 2d 842 (1967)) (other citation omitted).  However, a court may excuse a plaintiff who has failed to exhaust grievance procedures when "'(1) the employer's conduct amounts to a repudiation of the contractual procedures, or (2) the grievance procedure is controlled by the union and the employee has been prevented from exhausting his contractual remedies by the union's wrongful refusal to process the grievance.'"  *Id.* (quoting *Verrilli v. Sikorsky Aircraft Corp.*, No. 03 Civ. 541, 2003 WL 23138450, at *1 (D. Conn. Dec. 8, 2003) (citing *Vaca*, 386 U.S. at 185, 87 S. Ct. 903)).

UNITE was ultimately responsible for prosecuting Plaintiff's grievance.  When it decided, within its discretion, to abandon his grievance, Plaintiff exhausted his remedies as far as the process would allow.  Accordingly, because it was UNITE that made the decision not to arbitrate Plaintiff's grievance – the final step in the grievance process – and Plaintiff had no input with respect to this decision, the Court finds that Plaintiff exhausted his administrative remedies.

**C.      Plaintiff's Claim that Defendant Breached the CBA**

Plaintiff asserts that Defendant breached the Program contract and, by implication, the CBA by not giving him the benefits of the Program after it terminated his employment.  He also argues that UNITE breached its duty of fair representation by not proceeding to arbitration in this matter.  In response, Defendant argues that it did not breach the CBA because Plaintiff was terminated for theft on February 26, 2003, two days before he was entitled to receive benefits, and that Plaintiff cannot show that UNITE violated its duty of fair representation to him because its actions were neither arbitrary, discriminatory, or in bad faith, nor did they undermine the arbitral process.

*1. Breach of CBA*

"It is well-settled that an employee may maintain a breach of contract action based upon a CBA directly against the employer only if 'the employee can prove that the union as bargaining agent breached its duty of fair representation in its handling of the employee's grievance.'" *Tomney v. Int'l Ctr. for Disabled*, 357 F. Supp. 2d 721, 738 (S.D.N.Y. 2005) (quoting *Vaca,* 386 U.S. at 186).  Such an action is referred to as a "'hybrid § 301/fair representation claim.'" *Acosta v. Potter*, 410 F. Supp. 2d 298, 308 (S.D.N.Y. 2006) (quoting *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164-65, 103 S. Ct. 2281, 76 L. Ed. 2d 476 (1983)) (other citation omitted).  Whether a plaintiff sues both his employer and his union or simply elects to sue his employer for breaching the CBA, he must still prove that his union violated its duty to represent

him fairly. *See Carrion v. Enter. Ass'n, Metal Trades Branch Local Union 638*, 227 F. 3d 29, 34 (2d Cir. 2000). This is so because a hybrid claim is premised on the nature of the claim rather than on the identity of the parties. *See id.* (quotation omitted). As a result, a plaintiff-employee can only proceed against a defendant-employer on a claim that the defendant-employer breached the CBA if the plaintiff-employee's union has violated its duty of fair representation. *See Tomney*, 357 F. Supp. 2d at 738 (citation omitted).

### 2. Duty of Fair Representation

The duty of fair representation "requires that a union 'serve the interests of all members without hostility or discrimination towards any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct.'" *Verrilli v. Sikorsky Aircraft Corp.*, No. 03 CV 0541, 2005 WL 2491572, *5 (D. Conn. Oct. 7, 2005) (quoting *Marquez* [*v. Screen Actors Guild*, 525 U.S. 33, 44 (1998)]). "A union's actions 'may constitute evidence of a breach of duty only if [they] can be fairly characterized as so far outside of a 'wide range of reasonableness' that [they are] wholly irrational or arbitrary.'" *Id.* (quoting *Air Line Pilots Assoc. v. O'Neill*, 499 U.S. 65, 78, 111 S. Ct. 1127, 113 L. Ed. 2d 51 (1991)). In *Verrilli*, the court articulated a concise, two-prong test for determining whether a union breaches its duty of fair representation: (1) its conduct is "'arbitrary, discriminatory or in bad faith'" and (2) it has "seriously undermined the arbitral process.'" *Id.* (quotation omitted).

Applying this standard to the undisputed facts of this case, UNITE's conduct cannot be considered to be arbitrary, discriminatory, or in bad faith. On March 5, 2003, after Defendant

suspended Plaintiff, he filed a grievance requesting that he be reinstated so that he could "get

[his] exit interview and receive the voluntary package that [he] signed up for."  *See* Affidavit of

John Richman, sworn to March 23, 2004 ("Richman Aff."), at Exhibit "E" at 2.  Plaintiff met

numerous times with representatives from UNITE.  He explained his position to his union

representatives, and they took his grievance all the way through the Step 4 level.[4]  This is the

---

[4] Defendant's grievance procedure provides, in pertinent part, that

1. Only unresolved complaints shall become grievances and such grievances shall
be handled in the following sequence:

> a. Step 1:
>
> (1) Within five (5) working days from the date of the appeal of
> such unresolved complaints the General Supervisor and immediate
> Supervisor concerned shall meet with the employees and Shop
> Representatives concerned to discuss the grievances at  issue. . . .
>
> \* \* \*
>
> b. Step 2:
>
> (1) If no settlement is reached in Step 1, grievances, if pursued,
> shall then be reduced to writing by employees and/or the Shop
> Representatives concerned and submitted to the appropriate
> Subsection Manager . . . .
>
> (2) Grievances shall be heard by Subsection Managers or their
> delegates during the calendar week next following the date when
> the grievances were submitted. . . .
>
> \* \* \*
>
> (4) The Step 2 answers shall be the Company's position, unless
> subsequently changed in writing.
>
> c. Step 3:

(continued...)

final step before an unresolved grievance proceeds to arbitration.  At that point, UNITE decided

to withdraw the grievance rather than arbitrate it.  Plaintiff argues that, based on this decision,

"[t]he Union joined the company in cutting off Plaintiff's rights.  The Union did as much harm to

the Plaintiff as the company. . . .  To say that this was not a breach of the Union's duty to fairly

represent Plaintiff is ludicrous."  *See* Plaintiff's Memorandum of Law in Opposition to

Defendant's Cross-Motion for Summary Judgment at 9-10.

---

[4](...continued)

   (1) If no settlement is reached in Step 2, then the Shop Representatives concerned
   may notify Unit Industrial Relations of the Union's intention to appeal. . . .

   (2) Unit Industrial Relations shall schedule Step 3 grievance meetings at least
   twice each month.  Such meetings shall be attended by the appropriate Plant or
   Section Manager and Industrial Relations Representative for the Company, and by
   the appropriate Shop Representative and Business Agent for the Union.

                                        * * *

   d. Step 4:

   (1) If no settlement is reached in Step 3, then the Union Business Agent may
   appeal such grievances to Corporate Industrial Relations . . . .

   (2) The National Director, Xerographic Division, UNITE, AFL-CIO, and the
   Director, Corporate Industrial Relations, or the designated representative of each
   shall arrange for a meeting at least once each calender month to discuss
   grievances which have been appealed to Step 4. . . .

                                        * * *

   e. Step 5:

   (1) In the event that a grievance is not satisfactorily settled at Step 4 . . . [i]t may
   only be appealed to arbitration . . . .

   *See* Defendant's Exhibit "E-1" at Bate-stamped XER-BARBER-0089 –
   XER-BARBER-00091

Plaintiff's argument is unpersuasive.  Although an employee may disagree with the union's decision, "[a]n employee is not entitled as of right to the arbitration of a grievance." *Verrilli*, 2005 WL 2491572, at *6 (citing *Vaca v. Sipes*, 386 U.S. 171, 191, 87 S. Ct. 903, 17 L. Ed. 2d 842 (1967)).  Indeed, it is well-established that, "'when a union, after a good faith investigation of the merits of the grievance, concludes that the claim is insubstantial and refuses to encumber further its grievance channels by continuing to process a nonmeritorious claim, its duty of fair representation is satisfied and no claim against it may be brought.'" *Id.* (quoting *Taylor v. MCI, International*, 215 F. Supp. 2d 347, 350 (S.D.N.Y. 2002)).  There is nothing in the record to indicate that UNITE's decision not to arbitrate Plaintiff's grievance was arbitrary, discriminatory, or in bad faith.[5]  In fact, although Plaintiff claims that UNITE acted in bad faith, its actions belie this assertion.  UNITE took Plaintiff's grievance all the way through the Step 4 level, which is the final level before arbitration.  At the very least, this indicates that UNITE conducted a good faith investigation before it ultimately decided to abandon Plaintiff's grievance.

Therefore, viewing the record as a whole, the Court concludes that UNITE acted reasonably in its prosecution of Plaintiff's grievance and, therefore, did not breach its duty of fair representation.  *See, e.g., Verrilli*, 2005 WL 2491572 at *6 (holding that, where union action was not beyond the "wide range of reasonableness," union "was well within [its] discretion to decide not to pursue [arbitration].").  Accordingly, the Court grants Defendant's cross-motion for

---

[5]  The Court also notes that Plaintiff has not alleged any facts that would support a finding that UNITE acted arbitrarily, discriminatorily, or in bad faith.  Plaintiff's statements that UNITE harmed his rights just as much as Defendant are conclusory and, therefore, insufficient to create a genuine issue of material fact.

-11-

summary judgment on Plaintiff's claim and denies Plaintiff's motion for summary judgment.[6]

## IV. CONCLUSION

After carefully reviewing the entire file in this matter, the parties' submissions, and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Defendant's cross-motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court enter judgment in favor of Defendant and close this case.

**IT IS SO ORDERED.**

**Dated:** May 26, 2006
        Syracuse, New York

_____
Frederick J. Scullin, Jr.
Senior United States District Court Judge

---

[6] Since Plaintiff has failed to demonstrate that UNITE violated its duty of fair representation, he cannot maintain a claim against Defendant for its alleged breach of the CBA. *See Tomney*, 357 F. Supp. 2d at 738 (citation omitted).